Kenneth W. Maxwell
BAUMAN LOEWE WITT & MAXWELL PLLC
8765 East Bell Road, Suite 204
Scottsdale, Arizona 85260
Telephone: 480.502.4664 • Facsimile: 480.502.4774
Attorneys for Plaintiffs FARMERS INSURANCE EXCHANGE; FIRE INSURANCE EXCHANGE; and STATE FARM FIRE & CASUALTY COMPANY

CRAIG S. SIMON, ESQ. (*pro hac vice* application to be submitted)
RICHARD T. COLLINS, ESQ. (*pro hac vice* application to be submitted)
BERGER KAHN, A Law Corporation
2 Park Plaza, Suite 650
Irvine, California  92614-8516
Tel:  (949) 474-1880 • Fax:  (949) 474-7265
Attorneys for Plaintiffs FARMERS INSURANCE EXCHANGE; FIRE INSURANCE EXCHANGE

Mark S. Grotefeld (*pro hac vice* application to be submitted)
GROTEFELD HOFFMANN SCHLEITER GORDON & OCHOA LLP
311 S. Wacker Drive, Ste. 4500
Chicago, IL  60606
Telephone: (312) 551-0200 • Facsimile: (312) 601-2402
Attorneys for Plaintiffs STATE FARM FIRE & CASUALTY COMPANY

Todd Harshman (*pro hac vice* application to be submitted)
GROTEFELD HOFFMANN SCHLEITER GORDON & OCHOA LLP
655 Montgomery Street, Suite 1220
San Francisco, California 94111
Telephone: 415.344.9670 • Facsimile: 415.989.2802
Attorneys for Plaintiffs STATE FARM FIRE & CASUALTY COMPANY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| FARMERS INSURANCE EXCHANGE; FIRE INSURANCE EXCHANGE; and STATE FARM FIRE & CASUALTY COMPANY, <br><br> Plaintiffs, <br> vs. <br><br> UNITED STATES OF AMERICA DEPARTMENT OF THE ARMY; ARMY NATIONAL GUARD OF THE UNITED STATES; and DOES 1 through 100, inclusive, <br><br> Defendants. | **COMPLAINT** |

Plaintiffs FARMERS INSURANCE EXCHANGE, FIRE INSURANCE EXCHANGE, and STATE FARM FIRE & CASUALTY COMPANY allege as follows:

## INTRODUCTION

1. At all relevant times herein, plaintiffs were insurance companies, duly authorized to conduct and transact business in the State of Utah, who have paid claims to various policyholders ("INSUREDS"), stemming from a fire that began on or about September 19, 2010, at the Army Garrison Camp Williams ("Camp Williams"), located at 17800 Camp Williams Road, Riverton, Utah (the "Machine Gun Fire").

2. The Machine Gun Fire spread to the surrounding communities, ultimately covering more than 4,300 acres, destroying and damaging homes in its path, and causing the forced evacuation of over 1,600 homes.

3. This action seeks recovery of amounts paid by plaintiffs FARMERS INSURANCE EXCHANGE and FIRE INSURANCE EXCHANGE (collectively "FARMERS") to their INSUREDS as a result of the Machine Gun Fire, in the amount of $1,139,908.46. Attached to this complaint as Exhibit A is a chart, which lists the last names of FARMERS' INSUREDS, the respective claim numbers under which payments have been made, and damage amounts comprising FARMERS' subrogation claim.

4. This action also seeks recovery of amounts paid by plaintiff STATE FARM FIRE & CASUALTY COMPANY ("STATE FARM") to its INSUREDS as a result of the Machine Gun Fire, in the amount of $216,533.67. Attached to this complaint as Exhibit B is a chart, which lists the pertinent claim numbers, loss locations, and damage amounts comprising STATE FARM's subrogation claim.

## THE PLAINTIFFS

5. Plaintiffs repeat and re-allege each and every allegation made above, fully incorporating those allegations as though fully set forth herein.

6. Plaintiffs were and are insurers authorized to carry on the business of insurance within the State of Utah as insurance companies. At all times herein mentioned, plaintiffs insured the INSUREDS listed in Exhibits A and B, who were residents and domiciliaries

residing in Salt Lake County, Utah.

7. The Machine Gun Fire damaged and destroyed the INSUREDS' property including their homes, personal property, contents, and/or displaced the INSUREDS for an extended period while said damage was being repaired. This action seeks recovery of amounts paid by plaintiffs to their respective INSUREDS.

8. Pursuant to the terms of the insurance policies issued by plaintiffs to their respective INSUREDS, plaintiffs have investigated, adjusted and paid said damages, injuries and losses, consistent with their policies of insurance and their obligations under law. As such, plaintiffs have equitable subrogation rights against Defendants and DOES 1-100, and each of them, to the extent of the payments made as set forth in Exhibits A and B.

9. Under the terms, conditions and provisions of plaintiffs' policies of insurance and by operation of law, plaintiffs are equitably and legally subrogated to the claims, rights and demands of their INSUREDS, to the extent of the payments made.

## THE DEFENDANTS

10. Plaintiffs repeat and re-allege each and every allegation made above, fully incorporating those allegations as though fully set forth herein.

11. The United States of America is a duly constituted sovereign government.

12. Pursuant to 28 U.S.C. § 2671, defendant UNITED STATES OF AMERICA DEPARTMENT OF THE ARMY ("ARMY") is a Federal agency.

13. Pursuant to 28 U.S.C. § 2671, defendant ARMY NATIONAL GUARD OF THE UNITED STATES ("NATIONAL GUARD") is a Federal agency.

14. Pursuant to 28 U.S.C. § 1271, as amended in 1981, members of the NATIONAL GUARD while engaged in training are considered federal employees for whose negligent acts the United States is liable to the same extent as a private person would be liable.

15. The ARMY and NATIONAL GUARD personnel constitute employees of the federal government engaged in training or duty, and/or persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, in accordance with 28 U.S.C. § 2671.

16. Defendants DOE 1 through DOE 100, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to plaintiffs. When said true names and capacities are ascertained, plaintiffs will amend this complaint by inserting their true names and capacities herein. Plaintiffs are informed, believe and thereon allege that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that plaintiffs' damages as herein alleged were proximately caused by such defendants. Plaintiffs are informed, believe and thereon allege that each of the defendants designated as a DOE is responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages to plaintiffs as herein alleged.

17. Plaintiffs are informed, believe and thereon allege that at all times herein mentioned each of the defendants was the agent and employee of each of the remaining defendants, and in doing the things alleged below, was acting within the scope of such agency.

## JURISDICTION AND VENUE

18. Plaintiffs repeat and re-allege each and every allegation made above, fully incorporating those allegations as though fully set forth herein.

19. This Court has jurisdiction over the subject matter of this controversy pursuant to Article III, § 2 of the United States Constitution (as the United States is a party) and pursuant to 28 U.S.C. § 1346(b) (governing civil actions for claims against the United States for money damages for the injury to or loss of property).

20. This Court also has personal jurisdiction over the ARMY and NATIONAL GUARD pursuant to 28 U.S.C. § 1346(b).

21. Plaintiffs have complied with the Federal Tort Claims Act (28 U.S.C. § 2671 et seq.; the "FTCA") by submitting claims for each of their respective INSUREDS to the ARMY and NATIONAL GUARD prior to September 19, 2012.

22. This Court has jurisdiction over the subject matter of this controversy as the ARMY and NATIONAL GUARD failed to make a final disposition of any of the claims brought under the FTCA within six months of the submissions of said claims as prescribed by 28 U.S.C. § 2675(a).

20042072v1

23. This matter has been timely filed pursuant to 28 U.S.C. §§ 2401(b) and 2675(a).

24. Venue is appropriate in this judicial district under 28 U.S.C. § 1402(b) as this is the judicial district where the INSUREDS' real and personal property interests were damaged and where they reside.

## GENERAL ALLEGATIONS

25. Plaintiffs repeat and re-allege each and every allegation made above, fully incorporating those allegations as though fully set forth herein.

26. Defendants, and each of them, own and operate Camp Williams as a "National Guard Training Site." The Camp's training facilities include small arms weapons firing ranges, artillery firing points, demolition, grenade and crew-served weapon ranges.

27. Specifically, Camp Williams is used by defendants, and each of them, to train individuals in the use of machine guns, and contains at least one firing range where machine guns are used.

28. Camp Williams is a large military reservation – about twice as large as Manhattan – about 30 miles south of Salt Lake City and located in mountainous terrain, covered with grass, brush and scrub oak that are extremely flammable in hot and dry conditions.

29. On Thursday, September 16, 2010, at 2:52 pm, the National Weather Service ("NWS") issued a "Fire Weather Watch" for the following Saturday and Sunday, for areas including Camp Williams.

30. On Friday, September 17, 2010, at 2:34 pm, the NWS upgraded the issuance to a "Red Flag Warning" for the following Saturday and Sunday, for areas including Camp Williams.

31. On September 19, 2010, the weather conditions at Camp Williams were hot (a high of 95 degrees), dry (average humidity was 15% and there had been only 0.07 inches of rainfall the entire month), and windy (wind speeds were between 16 and 30 mph with gusts of 37 mph).

32. On the afternoon of Sunday, September 19, 2010, officials at Camp Williams proceeded with live .50-caliber machine gun training despite the NWS warnings and without checking to see if any warnings had been issued.

33. Live ammunition from the machine gun training exercise ignited the Machine Gun Fire at about 1:30 p.m. on Sunday, September 19, 2010.

34. Before the Machine Gun Fire started, a Camp Williams fire crew had arrived at the range and was parked between the holding area and the machine gun platforms. As the fire started, however, the fire crew did not attempt to extinguish it.

35. Once the Machine Gun Fire began, it spread quickly through sections of Camp Williams and soon broke through fire breaks and all other obstacles which were supposed to be able to prevent the spread of any such fire.

36. The Machine Gun Fire spread beyond the confines of Camp Williams and into a nearby residential area of Herriman and surrounding communities, ultimately covering more than 4,300 acres, destroying three homes, damaging many others, and causing the forced evacuation of over 1,600 homes.

37. Defendants, and each of them, had the ability to ascertain the fire conditions from the Wildland Fire Management personnel at Camp Williams, which obtains weather information primarily from the NWS.

38. A red flag warning by NWS should have alerted defendants, and each of them, to check everything within the system and make necessary adjustments.

39. Although defendants, and each of them, had these Red Flag Warnings in their possession, they failed to ascertain, review and consider the fire conditions daily before conducting the live firearms training exercises.

40. Had defendants, and each of them, ascertained, reviewed and considered the fire conditions, pursuant to procedures they should not have permitted the live firearms training exercises.

41. Defendants, and each of them, not only failed in their duty to ascertain, review and consider the fire conditions on Sunday, September 19, 2010, they affirmatively disregarded the open, apparent and conspicuous posting of the extreme fire danger level.

42. The ARMY and the NATIONAL GUARD admitted that, had they checked for fire warnings, they would not have conducted the training exercise.

43. Colonel William C. French, with the authority of the ARMY and the NATIONAL GUARD, admitted in a memo to Major General Brian Tarbet, dated October 19, 2010, that the above-referenced "errors that lead to the [live firearms training exercises] during extreme weather were the result of procedural failure and human errors within our systems."

44. On Monday, September 20, 2010, MG Tarbet, with the authority of the ARMY and the NATIONAL GUARD, admitted at a press conference that they "shot in the face of a Red Flag Warning, which is something we do not do. We had a communication error. My military people were unaware of it. We should have been aware of it."

45. Lieutenant Colonel Patrick Osmond, with the authority of the ARMY and the NATIONAL GUARD, admitted in a memo to Colonel Richard Miller, dated November 3, 2010, that defendants, and each of them failed to follow proper procedure or had no procedure for authorizing live firearms training exercises on Camp Williams.

46. Defendants, and each of them, with knowledge that the Machine Gun Fire had been ignited and that defendants' firefighters were present at the range to fight the fire, continued to conduct live firearms training exercises, despite policies and procedures that call for a cease-fire when a fire occurs anywhere on the grounds of Camp Williams.

47. Defendants' fire crew had arrived at the range before the Machine Gun Fire had been ignited, and had parked their apparatus between the holding area and the machinegun platforms. As the fire began and progressed, the firefighters determined that the area was unsafe and did not pursue the fire to extinguish it due to the ongoing live firearms training exercises.

48. Defendants, and each of them, should have ceased the live firearms training exercises and should have entered the area and attacked the fire before it spread to the neighboring communities, avoiding or mitigating plaintiffs' damages.

49. Under the FTCA, the ARMY and the NATIONAL GUARD'S liability for the consequences of its negligent acts and omissions is determined by whether a private individual would be responsible for similar negligence under Utah law. 28 U.S.C. § 2674 states, in pertinent part:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

### FIRST CAUSE OF ACTION – NEGLIGENCE
### (Against All Defendants)

50. Plaintiffs repeat and re-allege each and every allegation made above, fully incorporating those allegations as though fully set forth herein.

51. Defendants, and each of them, had a duty to use and operate its property with reasonable care so as to avoid causing damage to others, including to surrounding property owners, such as plaintiffs' INSUREDS.

52. Defendants, and each of them, breached their duty of care by performing live firearms training exercises when environmental conditions were ideal for wildland fire ignition and rapid propagation; on a day when the NWS issued a "Red Flag Warning;" and without checking the NWS or any other resource for the expected fire danger.

53. Defendants, and each of them, knew or should have known of the existence of these predicted and actual critical fire hazard conditions in and around Camp Williams prior to conducting live firearms training exercises.

54. Defendants, and each of them, did not have the discretion to conduct live firearms training exercises in "Red Flag Warning" conditions.

55. Defendants, and each of them, knew or should have known, given the history of fires escaping Camp Williams and threatening surrounding communities for the past 15 years, that conducting live firearms training exercises posed a great risk of fire, and that any fire ignited would spread to surrounding communities, threaten residents, and destroy property.

56. Defendants, and each of them, further breached their duty of care by failing to cease the live firearms training exercises and failing to enter the area to attack the fire before it spread to the neighboring communities.

57. Defendants, and each of them, knew or should have known, that the Machine Gun Fire had been ignited; that policies and procedures call for a cease-fire when a fire occurs anywhere on the grounds of Camp Williams; and that a failure to attack the fire would allow the fire to spread to surrounding communities, threaten residents, and destroy property.

58. As a proximate result of the breach of the duty to use reasonable care by defendants, and each of them, the Machine Gun Fire was ignited and permitted to spread to the surrounding communities, destroying and damaging the INSUREDS' property and causing plaintiffs' damages as alleged herein.

59. Pursuant to their policies of insurance, plaintiffs were required to pay, and did pay, their INSUREDS the amounts listed in Exhibits A and B for the damages caused by the Machine Gun Fire and are subrogated thereto.

## SECOND CAUSE OF ACTION – TRESPASS
### (Against All Defendants)

60. Plaintiffs repeat and re-allege each and every allegation made above, fully incorporating those allegations as though fully set forth herein.

61. Plaintiffs' INSUREDS owned, leased, and/or controlled real property in the communities surrounding Camp Williams.

62. The INSUREDS did not grant permission to or authorize defendants, or any of them, to cause the Machine Gun Fire to enter the INSUREDS' property.

63. The acts and omissions of defendants, and each of them, caused the Machine Gun Fire to escape Camp Williams and caused the unauthorized invasion of the Machine Gun Fire onto the INSUREDS' property, destroying and damaging the INSUREDS' property and causing plaintiffs' damages as alleged herein.

64. Pursuant to their policies of insurance, plaintiffs were required to pay, and did pay, their INSUREDS the amounts listed in Exhibits A and B for the damages caused by the

Machine Gun Fire.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against defendants, and each of them, as follows:

1. For compensatory damages, the exact amount of which will be proven at trial;

2. All costs of suit, including attorney fees, appraisal fees, consultant fees, engineering fees and related costs pursuant to 28 U.S.C. § 2412, and as otherwise permitted by law;

3. Prejudgment interest from September 19, 2010, all according to proof; and

4. For such other and further relief as the Court shall deem just and proper, all according to proof.

DATED this 16th day of September, 2013.

                                                BAUMAN LOEWE WITT & MAXWELL, PLLC

                                                /s/ Kenneth W. Maxwell
                                                Attorneys for Plaintiffs *FARMERS INSURANCE EXCHANGE; FIRE INSURANCE EXCHANGE; and STATE FARM FIRE & CASUALTY COMPANY*

# EXHIBT INDEX

Exhibit A        List of FARMERS' DAMAGES

Exhibit B        List of STATE FARM'S DAMAGES

**EXHIBIT A**
List of FARMERS' DAMAGES

| Insured Last Name | Claim Number | Total Paid Indemnity |
|---|---|---|
| BARTON | 1016911720-1 | $ 964.49 |
| BUTTERFIELD | 1016884924-1 | $ 137,250.00 |
| CASE | 1016884357-1 | $ 933,190.32 |
| COLES | 1017003527-1 | $ 6,746.97 |
| DWYER | 1016942158-1 | $ 22,463.25 |
| ETHERINGTON | 1016897596-1 | $ 1,934.45 |
| EVANS | 1017272583-1 | $ 539.12 |
| FOX | 1016911237-1 | $ 1,313.22 |
| GEHRKE | 1016894532-1 | $ 3,857.39 |
| GILL | 1016894119-1 | $ 1,191.72 |
| HOFELING | 1016922039-1 | $ 3,679.96 |
| JENKINS | 1016909959-1 | $ 3,663.76 |
| JENSEN | 1016895041-1 | $ 500.00 |
| KELCH | 1016884363-1 | $ 985.35 |
| LANDER | 1016904977-1 | $ 9,377.96 |
| ST CLAIR | 1016904221-1 | $ 5,914.97 |
| STEVENS | 1016920715-1 | $ 334.48 |
| STOUT | 1016898386-1 | $ 4,157.49 |
| VANCOTT | 1016896330-1 | $ 1,843.56 |
| **TOTAL** | | **$1,139,908.46** |

## EXHIBIT B
### List of STATE FARM'S DAMAGES

| Insured Loss Location | Claim Number | Total Paid Indemnity |
|---|---|---|
| 16184 Arnold Hollow Rd Herriman, UT 84096 | 44-U383-377 | $ 85,654.27 |
| 5773 West Sol Vista Cir Herriman, UT 84096 | 44-U383-420 | $ 25,718.65 |
| 14347 S Fort Perice Way Herriman, UT 84096 | 44-U383-484 | $ 7,835.58 |
| 14293 Trailview Way Herriman, UT 84096 | 44-U383-427 | $ 6,208.76 |
| 14178 Desert Creek Cir Herriman, UT 84096 | 44-U383-383 | $ 7,837.25 |
| 14438 S 6600 W Herriman, UT 84096 | 44-U383-384 | $ 6,596.30 |
| 14282 Bailey Hill Way Herriman, UT 84096 | 44-U383-387 | $ 11,181.29 |
| 5893 Muirwood Dr Herriman, UT 84096 | 44-U383-395 | $ 5,076.16 |
| 14427 Muirwood Cir Herriman, UT 84096 | 44-U383-397 | $ 22,883.76 |
| 14524 Friendship Dr Herriman, UT 84096 | 44-U383-408 | $ 21,749.82 |
| 14287 Bailey Hill Way Herriman, UT 84096 | 44-U383-426 | $ 853.03 |
| 13906 Lamont Lowell Cir Herriman, UT 84096 | 44-U383-463 | $ 5,068.97 |
| 5668 Eldora Circle Herriman, UT 84096 | 44-U383-468 | $ 3,599.85 |
| 14227 Trailview Way Herriman, UT 84096 | 44-U383-403 | $ 4,584.70 |
| 14664 Rose Summit Dr Herriman, UT 84096 | 44-U383-436 | $ 1,685.28 |
| TOTAL | | $216,533.67 |